■ AQ ASSET MANAGEMENT LLC et al., Respondents, v MICHAEL LEVINE, Respondent, and HABSBURG HOLDINGS LTD. et al., Appellants. [41 NYS3d 11]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered April 10, 2015, which denied the motion of defendants Habsburg Holdings Ltd. and Osvaldo Patrizzi to renew (1) their motion for an accounting and (2) their opposition to defendant Michael Levine's cross motion to dismiss so much of their fraud and breach of fiduciary duty cross claims

as related to Levine's payment of $625,000 to nonparty Karastir LLC, unanimously modified, on the facts and in the exercise of discretion, to grant renewal as to the opposition and, upon renewal, deny the currently contested portion of the cross motion, and otherwise affirmed, without costs.

Habsburg and Patrizzi sold half of their shares of various Antiquorum companies for $30 million; Levine was the escrow agent for that transaction. Levine said he disbursed a total of $925,000 from the escrow account to obtain loan commitments from Karastir. The IAS court permitted Habsburg and Patrizzi to sue Levine as to the last $300,000 of Karastir-related payments but not the first $625,000.

The motion court believed that the new fact offered by Habsburg and Patrizzi on their motion to renew was that Karastir did not have money to lend; it said that issue was raised in the original motion and addressed in the court's original decision. Actually, it does not appear to have been previously raised and discussed. In any event, the new fact was not just that Karastir did not have money to lend, but that all of the supposed loan commitment transactions may have been a sham. Before the motion to renew, the first three transactions with Karastir (the ones that led to the payment of $625,000 from Levine's escrow account) appeared to be regular. However, on the motion to renew, Habsburg and Patrizzi cast considerable doubt on the transactions and the credibility of Karastir's principal.

The new evidence showed that the final $300,000 benefitted an entity of which Levine owned 49%. If all or part of the first $625,000 also went to this entity, this could constitute a breach of fiduciary duty on Levine's part. In addition, if Levine led Habsburg and Patrizzi to believe that the first $625,000 constituted normal commitment fees, but they actually went to his entity, this could support their fraud claim. Concur—Mazzarelli, J.P., Acosta, Richter, Kapnick and Gesmer, JJ.